UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

VERSUS

MINDEN SEAFOOD, LLC, *et al.*

CIVIL ACTION

NO. 24-2360

SECTION M (4)

### ORDER & REASONS

Before the Court is a motion to dismiss for improper venue, or alternatively, to transfer this case to the United States District Court for the Western District of Louisiana, Shreveport Division, filed by defendants Minden Seafood, LLC and Dorcheat Seafood, LLC (together, "Defendants").[1] Plaintiff United States Equal Employment Opportunity Commission (the "EEOC") responds in opposition,[2] and Defendants reply in further support of their motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion to transfer the case to the United States District Court for the Western District of Louisiana, Shreveport Division.

I. BACKGROUND

This case concerns sex discrimination claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 by the EEOC on behalf of Tiffany Frankel.[4] In 2011, Frankel began working as a waitress at Defendants' Dorcheat Seafood restaurant.[5] She became a cashier at Defendants' Minden Seafood location in 2018.[6] In February 2021, Ledderick "Bubba" Edwards started working with Frankel at Minden Seafood.[7] Soon after,

---

[1] R. Doc. 5.
[2] R. Doc. 8.
[3] R. Doc. 9.
[4] R. Doc. 1 at 1.
[5] *Id.* at 3.
[6] *Id.*
[7] *Id.*

Edwards began sexually harassing Frankel by making unwanted and inappropriate comments about her body.[8] Edwards escalated the harassment and began sexually propositioning Frankel by insinuating that he would pay her bills if she would have sex with him.[9] Prior to November 2021, Frankel told one or more co-workers about Edwards's behavior, which co-workers in turn told Defendants' sole proprietor and general manager, Jeremy Wesson.[10] In November 2021, Edwards followed Frankel into a bathroom where he exposed himself to her and made a lude, inappropriate comment, which caused Frankel to fear that Edwards would rape her.[11] Frankel contacted the police and Edwards was arrested.[12] The next day, Frankel complained to Wesson about Edwards's conduct and requested that he not be permitted to work at the same time that she was scheduled.[13] Wesson did not heed Frankel's request or take any other appropriate steps to remedy the situation.[14] Frankel worked at Minden Seafood with Edwards for three more days during which time Edwards continued to harass Frankel, including showing her cash and asking her to sleep with him, which Frankel interpreted as an offer of payment for sex.[15] On November 15, 2021, Frankel resigned her position with Defendants because she feared for her safety due to Edwards's behavior.[16] Two days later Frankel told Wesson that she was pressing charges against Edwards and asked to return to work at Dorcheat Seafood, where Edwards did not work.[17] Wesson declined her request.[18]

---

[8] *Id.* at 3-4. Edwards also allegedly harassed other female co-workers during the same period. *Id.* at 4.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* at 5.
[16] *Id.*
[17] *Id.*
[18] *Id.*

Frankel then filed a charge of discrimination with the EEOC alleging that Minden Seafood violated Title VII.[19] On August 30, 2023, the EEOC issued to Defendants a letter of determination finding reasonable cause to believe that they violated Title VII and inviting them to join with the EEOC in informal methods of conciliation to try to eliminate the unlawful employment practices and provide relief to Frankel.[20] The EEOC communicated with Defendants to provide the opportunity to remedy the discriminatory practices described in the determination letter.[21] On October 13, 2023, the EEOC issued to Defendants a notice of conciliation failure.[22] Then, on September 27, 2024, the EEOC filed the instant action against Defendants, alleging that they violated Title VII by subjecting Frankel to a hostile work environment because of her sex, terminating her because of her sex, and retaliating against her by not rehiring her because she engaged in an activity protected by Title VII.[23] Although the events giving rise to this lawsuit occurred in the Western District of Louisiana, the EEOC alleged that venue is proper in the Eastern District of Louisiana pursuant to Title VII's special venue provision, which states that –

> [e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

---

[19] *Id.* at 3.
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at 1-9.

3

42 U.S.C. § 2000e-5(f)(3). The EEOC contends that this statute allows a Title VII case to be brought in any judicial district in the state where the unlawful employment practice is alleged to have been committed, which here, is Louisiana.[24]

## II.  PENDING MOTION

Defendants move to dismiss, or alternatively, to transfer this matter due to improper venue.[25] They argue that, pursuant to certain rules of statutory interpretation, § 2000e-5(f)(3) should be read narrowly to permit filing only in a judicial district where (1) the unlawful employment practice is alleged to have been committed, (2) the employment records are maintained and administered, or (3) the charging party worked.[26] Alternatively, Defendants argue that this case should be transferred because the factors outlined in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), weigh in favor of transfer to the Western District of Louisiana.[27] Defendants argue that all four private interest factors – (1) the relative ease of access to sources of proof, (2) the availability of compulsory process, (3) the cost of attendance for willing witnesses, and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive – favor transfer to the Western District of Louisiana where the underlying events occurred and the documents, if any, and firsthand witnesses (including the complainant, alleged harasser, and business owner) all reside.[28] They also argue that three of the public interest factors – (1) administrative difficulties flowing from court congestion, (2) familiarity of the forum with the law that will govern the case, and (3) avoidance of unnecessary problems of conflict of law or in the application of foreign law – are neutral, and that the fourth public interest factor – local interest in

---

[24] *Id.* at 1; R. Doc. 8 at 2, 4-7.
[25] R. Doc. 5.
[26] R. Doc. 5-1 at 1, 5-12.
[27] *Id.* at 13-18.
[28] *Id.* at 14-17.

4

having localized interests decided at home – favors transfer to the location where the underlying events occurred.[29]

In opposition, the EEOC argues that the plain meaning of § 2000e-5(f)(3) permits a Title VII action to be filed in any judicial district in the state where the unlawful employment practice is alleged to have been committed (here, Louisiana).[30] It also argues that Defendants have not met their burden of proving that transfer is appropriate under the *Gilbert* factors.[31] The EEOC argues that the private interest factors weigh against transfer because (1) it has the relevant documents at its office in New Orleans; (2) most unwilling witnesses would be subject to compulsory process anywhere in Louisiana and any other unwilling witness can testify via Zoom; (3) the EEOC will pay the cost of attendance for Frankel and the travel, lodging, and meals of any other witness it commands to testify at trial; and (4) receiving testimony via Zoom can be used to make the trial more cost effective and efficient.[32] The EEOC argues that the public interest factors also weigh against transfer because (1) on average, cases get to trial eight months faster in the Eastern District than in the Western District; (2) the relevant interests of a Title VII claim are national, not regional or more localized; (3) both forums are equally familiar with the law; and (4) there is no issue of conflict of laws or application of foreign law.[33]

Defendants reply reasserting their position that venue in this case is only proper in the Western District under the special venue provision.[34]

---

[29] *Id.* at 14, 17-18.
[30] R. Doc. 8 at 2, 4-7.
[31] *Id.* at 11-26.
[32] *Id*. at 13-23.
[33] *Id.* at 23-27.
[34] R. Doc. 9.

### III. LAW & ANALYSIS

Defendants move for either dismissal or transfer due to improper venue. Because the Court finds that transfer to the Western District of Louisiana is appropriate, it assumes, without deciding, that venue is proper in the Eastern District of Louisiana pursuant to § 2000e-5(f)(3).

**A. Legal Standard**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[35] 28 U.S.C. § 1404(a). A defendant seeking transfer must show "good cause," meaning the defendant "must satisfy the statutory requirements and clearly demonstrate that a transfer is 'for the convenience of parties and witnesses, in the interest of justice.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.*

Courts apply the private and public interest factors originally set out in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), when evaluating whether another district could be clearly more convenient. *In re Volkswagen*, 545 F.3d at 315. As the Fifth Circuit has explained:

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

---

[35] The parties do not dispute that this case could have been brought in the Western District of Louisiana. *See* R. Doc. 8 at 11 n.7.

*Id.* (quotations, internal citation, and alteration omitted). These factors are not necessarily exhaustive or exclusive, and none has dispositive weight. *Id.*

### B. Analysis

#### 1. Private Interest Factors

##### a. Access to sources of proof

The first of the four private factors is access to sources of proof. The Fifth Circuit has clarified:

> The first factor focuses on the location of documents and physical evidence relating to the case. The question is *relative* ease of access, not *absolute* ease of access. That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case. But when the vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis.

*In re TikTok*, 85 F.4th 352, 358 (5th Cir. 2023) (emphasis in original; quotations and alterations omitted). Here, this factor appears to be neutral. Defendants say that any relevant documents, including Frankel's and Edwards's employment records, would be housed at their office in Minden.[36] The EEOC claims, on the other hand, that Defendants have no documents because one of the restaurants burned down, but the EEOC has its case file in New Orleans.[37] What neither party explains is the volume of the records and whether the vast majority are electronic, which would make them equally accessible in either forum. Without such information, this Court will deem the ease of access to sources of proof neutral.

##### b. Availability of compulsory process

The second private interest factor pertains to the availability of compulsory process to procure the attendance of unwilling witnesses. A district court has subpoena power over a person

---

[36] R. Doc. 5-1 at
[37] R. Doc. 8 at 14.

who "resides, is employed, or regularly transacts business in person" within 100 miles of the location of the court or within the state in which the court sits. Fed. R. Civ. P. 45(c)(1)(A). It also has subpoena power over a person who "resides, is employed, or regularly transacts business in person [within the state], if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). As explained by Defendants, all the witnesses with firsthand knowledge of the events giving rise to this lawsuit reside in or near Minden, including Frankel, Wesson, Edwards, and Frankel's co-workers and healthcare providers.[38] Minden is 387 miles from New Orleans. While this Court would have subpoena power over Wesson and any of Frankel's former co-workers who are still employed by Defendants, its power to subpoena other witnesses from the Minden area depends on the expense they would incur. *See EEOC v. Am. Screening, LLC*, 2022 WL 2177483, at *3 (E.D. La. June 14, 2022) (explaining that a corporate party's employees can be compelled to testify at a trial anywhere in the state, but that other witnesses who live near Shreveport may incur substantial expense and thus not be subject to compulsory process). The Court finds that these other witnesses would incur substantial expense if they were required to attend a trial in New Orleans, because the drive from Minden to New Orlans is around five hours and gas is expensive, as are plane tickets. *See id.* (reasoning likewise in case involving events that occurred in Shreveport, which is only 30 miles from Minden). Thus, unwilling witnesses not employed by Defendants would be beyond this Court's subpoena power. *See id.* As noted in *American Screening*, "[w]hile it may be possible for witnesses to testify by videoconference technology, there are benefits to in-person testimony, including the ability to consider a witness's body language and demeanor on the stand." *Id.* Moreover, although some witnesses (*viz.*, the corporate parties' employees) may be subject to

---

[38] R. Doc. 5-1 at 15-16.

compulsory process in this district, even they should not be unnecessarily subjected to substantial travel expense and the parties should have the benefit of in-person testimony. *Id.* By contrast, compulsory process is available for all currently identified witnesses if the case were transferred to the Shreveport Division of the Western District. Accordingly, this factor favors transfer.

### c. Cost of attendance for willing witnesses

The third private interest factor concerns the cost of attendance for willing witnesses. The Fifth Circuit uses distance as an analogue for convenience. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004). The Fifth Circuit further explained:

> Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.

*Id.* at 205.

This factor favors transfer. As explained above, travel from Minden to New Orleans would be expensive and virtual testimony is not always effective. *Am. Screening, LLC*, 2022 WL 2177483, at *4. Further, although the EEOC says that it would pay the travel expenses of Frankel and any other witness it compels,[39] this does not make up for the time those witnesses would be removed from their regular work or home responsibilities, which would be more protracted and complicated given that New Orleans is about a five-hour drive from Minden. The cost of

---
[39] R. Doc. 8 at 20.

attendance for willing witnesses is significantly mitigated by transfer to the federal court in Shreveport.

### d. Other practical problems

The fourth private interest factor, which encompasses "all other practical problems that make trial of a case easy, expeditious and inexpensive," *In re Volkswagen*, 545 F.3d at 315, weighs in favor of transfer. As in *American Screening*, "[c]onsidering that a number of witnesses likely live near Shreveport, holding the trial in Shreveport would promote efficiency by allowing flexibility in the order of those witnesses' testimony and by preventing delays due to technical difficulties that might accompany virtual testimony in a trial elsewhere." *Am. Screening, LLC*, 2022 WL 2177483, at *4.

### 2. Public Interest Factors

#### a. Court congestion

The first public interest factor, which concerns court congestion, is said to be the most "speculative" of the *Gilbert* factors. *See In re Clarke*, 94 F.4th 502, 515-16 (5th Cir. 2024). Thus, while the statistics cited by the EEOC show that cases get to trial a bit faster in this district than in the Western District of Louisiana,[40] this factor is neutral, or only weighs slightly against transfer, because an estimate of court congestion, "at its core, is an uninformed guess." *Id.*.

#### b. Local interest

The second public interest factor is "the local interest in having localized interests decided at home," *In re Volkswagen*, 545 F.3d at 315, and has been explained by the Fifth Circuit this way:

> [Courts] do not consider the parties' connections to the venue because the local interest analysis is a public interest factor. Accordingly, the local-interest inquiry is concerned with the interest of *non-party citizens* in adjudicating the case. Considerations such as the location of the injury, witnesses, and the plaintiff's

---

[40] R. Doc. 8 at 23-24.

residence, are useful proxies for determining what local interests exist in each venue.

*In re Clarke*, 94 F.4th at 511 (emphasis in original; footnote, quotation, internal citation, and alteration omitted). Here, this factor strongly favors transfer because it is undisputed that the alleged discrimination and harassment occurred in the Shreveport (Minden) area and involved people who lived there at the time and a business that still operates there. *Am. Screening, LLC*, 2022 WL 2177483, at *4. Further, non-party citizens of the Western District certainly have a stake in the adjudication of a case involving wrongs committed against their fellow citizen by businesses in their district.

### c. Familiarity with governing law

The third public interest factor evaluates the relative familiarity of the transferor and transferee courts with the law that will govern the case. In this case, both parties agree that this factor is neutral because both proposed venues are equally familiar with the federal law that governs.[41]

### d. Avoidance of conflicts of law or application of foreign law

The final public interest factor considers whether transfer would "avoid[] … unnecessary problems of conflict of laws or in the application of foreign law." *In re Volkswagen*, 545 F.3d at 315. In this case, both parties agree that this factor is neutral because there are no conflicts of law or foreign law issues.[42]

\*   \*   \*   \*

---

[41] *See* R. Docs. 5-1 at 18; 8 at 25.
[42] *See* R. Docs. 5-1 at 18; 8 at 25.

On balance, then, when the *Gilbert* factors are considered as a whole, Defendants have demonstrated that the Western District of Louisiana is a "clearly more convenient" forum. *In re Volkswagen*, 545 F.3d at 315.

IV. **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion to transfer (R. Doc. 5) is GRANTED, and this matter is TRANSFERRED to the United States District Court for the Western District of Louisiana, Shreveport Division.

New Orleans, Louisiana, this 11th day of March, 2025.

                                                BARRY W. ASHE
                                                UNITED STATES DISTRICT JUDGE